
AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Samsung Cellular Phone<br>Case Number: SYS-26-01-0017<br>("Target Device 2") | )<br>)<br>)   Case No.   **26-mj-00282**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(2)(B)(ii) | Bringing in Aliens for Financial Gain |
| 18 USC Sec. 2 | Aiding and Abetting |

The application is based on these facts:
See Attached Affidavit of CBP Officer Michael T. Tran, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Michael T. Tran, U.S. CBP Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: 01/16/2026

*Judge's signature*

City and state: San Diego, California       HON. KAREN S. CRAWFORD, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Michael T. Tran, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant to search the following electronic devices:

> Blue Oppo Cellular Phone
> Case Number: SYS-26-01-0017
> **("Target Device 1")**
>
> Black Samsung Cellular Phone
> Case Number: SYS-26-01-0017
> **("Target Device 2")**

the ("**Target Devices**"), as further described in Attachment A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Bringing In Aliens for Financial Gain) and Title 18, United States Code, Section 2, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Kleyver Orlando NAVA-Torres (D1) and Jose Alfredo SOTO-Sierra (D2) for Bringing in an Alien into the United States for Financial Gain and Aiding and Abetting. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, California.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

///

1

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2021 and am currently assigned to the San Ysidro, California Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for approximately four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers, alien transporters, and aliens, in particular those who attempt to smuggle aliens and/or be smuggled into the United States from Mexico and transport them/be transported throughout the Southern District of California. I am aware that it is a

2

common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens or smugglers in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers, passengers, and aliens involved in transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States, and/or what to expect having just crossed. These communications may also include locations for delivery to stash houses and/or information about sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers and aliens to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver or aliens after an apprehension has occurred.

3

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to bring in smuggled aliens and/or be smuggled from Mexico into the United States and within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the bringing in of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in the bringing in of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the bringing in of smuggled aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the users of, or persons with control over or access to, the **Target Devices**; and/or

      f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On January 15, 2026, at approximately 9:35 A.M., Kleyver Orlando NAVA-Torres (D1), a Mexican citizen, applied for admission into the United States from Mexico via the San Ysidro, California Port of Entry vehicle primary lanes as the driver and sole visible occupant of a Nissan V-ride bearing Baja California license plates. During pre-primary roving operations, a CBP Officer noticed the rear of the vehicle was sitting low as if something was heaving in the trunk. The CBP Officer approached D1, who, upon inspection, presented his valid Border Crossing Card and stated that he was traveling to San Diego, California to go shopping with nothing to declare from Mexico. The CBP Officer conducted a cursory inspection of the vehicle and discovered two individuals lying in the trunk of the vehicle. The CBP Officer requested assistance and D1 was secured and escorted to the security office for initial processing. While D1 was being escorted, the CBP Officer asked Defendant if anyone had asked him to bring anything from Mexico into the United States or from the United States into Mexico, to which the Defendant replied, "No." The vehicle was driven to secondary by responding CBP Officers for further inspection.

12. In secondary, responding CBP Officers assisted and removed two adult male individuals from the trunk of the vehicle. The male individuals were later identified as Jose Alfredo SOTO-Sierra (D2), a citizen of Mexico, and Liping JIANG (MW), a citizen of China, both with no entitlements to enter, reside or pass through the United States. D2 and MW were secured and escorted to the security office for initial processing.

13. In the security office, D2 was queried by fingerprint and photograph comparison through the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS). IDENT and IAFIS returned a match to the query linking D2 to Federal Bureau of Investigations (FBI) and

Department of Homeland Security (DHS) records, which identified D2 as a citizen of Mexico and a previously deported criminal alien.

14. Further DHS records confirmed D2 is a citizen of Mexico without legal documents or entitlements to enter the United States. DHS records revealed D2 was ordered removed from the United States to Mexico by Immigration Officials on or about February 16, 2010, and was subsequently physically removed from the United States to Mexico the same day, via Nogales, Arizona. D2 was most recently removed from the United States to Mexico on or about November 9, 2011, via Brownsville-Matamor, Texas pursuant to a Reinstatement of Deportation order. DHS records contain no evidence D2 has applied for or received permission from the Attorney General of the United States or designated successor, the Secretary of the Department of Homeland Security, to legally re-enter the United States.

15. At approximately 11:53 A.M., during a video-recorded interview, MW admitted to being a citizen of China without legal documents to enter the United States. MW stated that his friend had made the smuggling arrangements for him. MW reported staying at an unknown house in Tijuana, Mexico, where an unidentified male later picked him up and drove him to an unknown street. MW was then instructed to exit the vehicle and enter the trunk of another vehicle parked on that street. MW stated that he remained in the trunk for approximately one hour and heard voices while inside. MW further stated that he was going to pay a smuggling fee of $50,000 USD upon successful entry into the United States. MW intended to go to Los Angeles, California, to live and work.

16. **Target Device 1** was discovered within D1's personal property during an inventory. During the interview, D1 claimed ownership of **Target Device 1**. **Target Device 2** was discovered within D2's personal property during an inventory. During the interview, D2 claimed ownership of **Target Device 2**. **Target Device 1** and **Target Device 2** were subsequently seized and are now being held as evidence by Customs and Border Protection.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and

6

opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that D1 was using **Target Device 1** to communicate with others to further the smuggling of illegal aliens into the United States, and that D2 was using **Target Device 2** to coordinate his smuggling into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of the smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens and/or smuggled persons. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on January 1, 2026, up to and including January 15, 2026.

## METHODOLOGY

18.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or

1  hard drive equivalents and store information in volatile memory within the device or in
2  memory cards inserted into the device. Current technology provides some solutions for
3  acquiring some of the data stored in some cellular telephone models using forensic
4  hardware and software. Even if some of the stored information on the device may be
5  acquired forensically, not all of the data subject to seizure may be so acquired. For devices
6  that are not subject to forensic data acquisition or that have potentially relevant data stored
7  that is not subject to such acquisition, the examiner must inspect the device manually and
8  record the process and the results using digital photography. This process is time and labor
9  intensive and may take weeks or longer.

10  19.  Following the issuance of this warrant, a case agent familiar with the
11  investigation will collect the subject cellular telephone and subject it to analysis. All
12  forensic analysis of the data contained within the telephone and its memory cards will
13  employ search protocols directed exclusively to the identification and extraction of data
14  within the scope of this warrant.

15  20.  Based on the foregoing, identifying and extracting data subject to seizure
16  pursuant to this warrant may require a range of data analysis techniques, including manual
17  review, and, consequently, may take weeks or months. The personnel conducting the
18  identification and extraction of data will complete the analysis within ninety (90) days of
19  the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21  21.  Law enforcement has not attempted to extract data from the **Target Devices**.
22  Law enforcement is now seeking to obtain the evidence in the **Target Devices** through this
23  warrant.
24  ///
25  ///
26  ///
27  ///
28  ///

8

1 ///
2 ///
3 ///
4 ///
5 ///
6 ///

## CONCLUSION

22. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324(a)(2)(B)(ii) and Title 18, United States Code, Section 2. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachment A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Michael T. Tran, CBP Officer
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, on January 16, 2026.

_____
HON. KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Samsung Cellular Phone
Case Number: SYS-26-01-0017
**("Target Device 2")**

**Target Device 2** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2026, up to and including January 15, 2026:

a. tending to indicate efforts to bring in smuggled aliens and/or be smuggled from Mexico into the United States and within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the bringing in of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in the bringing in of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the bringing in of smuggled aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the users of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 8, United States Code, Section 1324, and Title 18, United States Code, Section 2.